IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND N. COLEMAN,

    Petitioner,                     No. CIV S-09-0638 GGH P

    vs.

MICHAEL MARTEL,
                                         ORDER &amp;
    Respondent.                FINDINGS AND RECOMMENDATIONS

                                          /

I. Introduction

        Petitioner is a state prisoner represented by appointed counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 conviction for first degree murder with special circumstances where he was sentenced to life imprisonment without the possibility of parole. This action is proceeding on the amended petition (AP) filed October 13, 2009, raising the following claims: 1) the trial court erred by permitting the introduction of a prior conviction; and 2) the trial court erred by preventing an expert witness from testifying that drug dealers often carry guns. AP at 2.

        After carefully considering the record, the court recommends that the petition be denied.

\\\\\

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court

authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it

3

below.[1]

On December 12, 2004, Dwayne Harvey was shot and killed while sitting in his parked car at Fourth Avenue Park in Sacramento. He was shot nine times by two different weapons-a .40-caliber semiautomatic handgun and a .38-caliber revolver. Shell casings or bullets from each weapon were recovered from Harvey's body and his car.

Prosecution's case

One of the prosecution's main witnesses was Sammy Anderson, a friend of both defendants who pleaded guilty to being an accessory to murder (§ 32) in return for his truthful testimony and a one-year jail sentence. According to Anderson, on the night of the murder, Anderson, [petitioner], and Allen went to the Fourth Avenue Park to consummate a drug deal that [petitioner] had arranged with the victim Harvey. It was [petitioner's] idea to kill Harvey. While waiting for Harvey to arrive, Anderson decided to leave and was walking away from the park when Harvey's car pulled up. Anderson saw Allen shoot Harvey from outside of the car, near the passenger door, and after a pause, heard more rounds of gunfire. Anderson did not see [petitioner] with a gun that night, but was with [petitioner] the next day in the same park when [petitioner] picked up a gun from the grass and hid it in a car parked on the street.

Testimony from eyewitnesses revealed that one of the defendants was seen searching Harvey's pockets and car after the shooting, and was holding a black revolver in his hand. The person searching Harvey was wearing a long, black coat with black pants, which matched a description of what [petitioner] was wearing the night of the shooting. The other man had on a black coat with fur trim on the hood, which matched a description of what Allen was wearing on the night of the shooting. One witness said that two men walked up to Harvey's car, and then he heard two rounds of different sounding shots. Two witnesses also testified that Allen made statements to the effect that he shot Harvey.

Defense case

[Petitioner] testified in his own defense. He stated that on the night of the shooting, he called Harvey to buy crack cocaine and arranged to meet him at the park with Allen and Anderson. As they were waiting for Harvey, [petitioner] overheard Allen whisper to Anderson that "he was going to do the dude" but did not see Allen carrying a gun and did not believe what Allen said. When Harvey's car arrived, Anderson was walking away. Allen approached the car and [petitioner] followed behind him. Allen walked to the passenger side of the car, reached into the window, and fired shots into the car. After firing about five shots, [petitioner] saw Allen move to the front of the car and begin firing again with what sounded like a different gun. [Petitioner] insisted that at no time did he have a gun. When Allen ran away, [petitioner] opened the driver's door and pulled Harvey out of the car. He decided to look for drugs or money in the

---

[1] Petitioner and co-defendant, Andre Marcus Allen (Allen), were tried before separate juries. AP at 5.

4

>vicinity. Finding none, [petitioner] took Harvey's cell phone.
>
>Defendant Allen testified that [petitioner] was carrying a black revolver with him that evening when they went to meet Harvey. When Harvey arrived at the park, [petitioner] walked up to the car, while Allen stayed behind. Allen heard three gunshots, and then heard more gunshots as he ran away from the park. He knew that [petitioner] intended to rob Harvey that night.

People v. Coleman, 2008 WL 2842541 *1-2.

IV. Argument & Analysis

        Claim 1 - Admission of Evidence

Petitioner argues he was denied his Fourteenth Amendment right to due process when the trial court permitted the introduction of a prior conviction. AP at 15.

*Legal Standard*

"Habeas relief is available for wrongly admitted evidence only when the questioned evidence renders the trial so fundamentally unfair as to violate federal due process." Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993). See also Larson v. Palmateer, 515 F.3d 1057, 1065 (9th Cir. 2008) (because federal habeas relief is limited to such instances, "[t]he correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review[.]"); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. Jammal v. Van de Kamp, 926 F.2d 918, 919 (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983)).

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). The Supreme Court has admonished that the category of infractions that violate "fundamental fairness" has been defined very narrowly. Estelle, 502 U.S. at 72. In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.

2009), the Ninth Circuit noted the "Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams[v. Taylor], 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. at 1101. Thus, a habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended by 421 F.3d 1154 (9th Cir. 2005).

*Discussion*

Petitioner argues that his right to a fair trial was violated when the trial court allowed into evidence petitioner's prior conviction for possession of a concealed firearm. At trial, petitioner's defense was that he was unarmed at the time of the shooting and did not shoot the victim. Petitioner contends that introduction of the prior conviction for gun possession led to the impermissible propensity inference that petitioner had a gun during the murder. Petitioner states that this was highly prejudicial while only containing slight probative value. AP at 15.

The California Court of Appeal denied this claim in a reasoned opinion:

> Before testifying, [petitioner] moved to exclude evidence of a prior conviction sustained in 2003 for possession of a concealed firearm (§ 12025, subd. (b)). [Petitioner] argued that under Evidence Code section 352, "the probative value [would] be substantially outweighed by the probability that it will have undue consumption of time ... [¶] ... a danger of undue prejudice ..., confusing issues or misleading the jury." He also argued that the conviction has "little or no credibility [or] impeachment value." The trial court overruled the objections and admitted the prior felony conviction for impeachment.
>
> [Petitioner] contends that "[t]he [trial] court prejudicially erred by permitting [him] to be impeached with a prior conviction of possessing a concealed handgun" because "it was likely to lead to the impermissible propensity inference that [he] had a gun during Harvey's murder," thus undermining his defense that he was unarmed.
>
> Any witness in a criminal trial may be impeached with a prior felony conviction. (Evid.Code, § 788; People v. Sizelove (1955) 134 Cal.App.2d 104, 108.) The rationale is that the conviction is relevant to the jury's assessment of the witness's credibility, since the offense reflects on honesty and veracity. (People v. Castro

6

(1985) 38 Cal.3d 301, 314 ( Castro ).)

Subject to the court's discretion under Evidence Code section 352,[2] any felony involving moral turpitude, or a "general readiness to do evil," may be used for impeachment. (Castro, supra, 38 Cal.3d at p. 314, italics omitted; People v. Beagle (1972) 6 Cal.3d 441, 452-454.) In exercising its discretion to admit prior convictions for impeachment, the trial court should be guided by the four factors set out in Beagle: (1) whether the prior conviction reflects on honesty and integrity; (2) whether it is near or remote in time; (3) whether it was suffered for the same or substantially similar conduct for which the witness-accused is on trial; and (4) what effect admission would have on the defendant's decision to testify. (Castro, supra, 38 Cal.3d at p. 307, citing Beagle, supra, 6 Cal.3d at p. 453.)

A trial court's decision to admit or exclude evidence under Evidence Code section 352 is reviewed for abuse of discretion. (People v. Mendoza (2007) 42 Cal.4th 686, 699.) A trial court's exercise of discretion will not be disturbed unless the court exceeds the bounds of reason such that the result manifests an injustice. (People v. Green (1995) 34 Cal.App.4th 165, 182-183.)

Here, the admission of the prior conviction did not prevent [petitioner] from testifying and is a crime of moral turpitude (People v. Robinson (2005) 37 Cal.4th 592, 626), both of which support the trial court's decision. Moreover, [petitioner's] prior felony conviction occurred in 2003, only one year before the murder of Harvey. The short length of time between these incidents weighs heavily in favor of admitting the conviction. (People v. Burns (1987) 189 Cal.App.3d 734, 737-738.) Further, [petitioner's] prior conviction for possession of a concealed weapon bore little similarity to the charged offenses of murder and robbery. Therefore, admission of the prior conviction would not result in undue prejudice against [petitioner]. (People v. Castro (1986) 186 Cal.App.3d 1211, 1216-1217.)

[Petitioner] argues that admission of the prior conviction was highly prejudicial because it showed a "predisposition" to carry firearms, thereby eviscerating his defense that he did not have a gun. But at the time the prior was admitted, the trial court cautioned the jury that [petitioner's] prior felony may only be used to evaluate the witnesses credibility. The trial court gave a similar instruction again at the end of the trial. We presume the jury followed the trial courts instructions. (People v. Osband (1996) 13 Cal.4th 622, 714.)

Since all of the Beagle factors strongly favored admission of the prior conviction, and there was little danger of prejudice, we find no abuse of discretion.

People v. Coleman, 2008 WL 2842541 *2-3.

Petitioner relies on the pre-AEDPA case of McKinney v. Rees, 993 F.2d 1378

---

[2] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

(9th Cir. 1993), which did hold that unwarranted and unduly prejudicial admission of propensity evidence constituted a due process violation. Id. at 1385. McKinney understood that the Supreme Court had left "unanswered" the question: "When does the use of character evidence to show propensity constitute a violation of the Due Process Clause?" Id. at 1384. McKinney did cite to federal criminal cases which recognized the disfavored nature of character evidence, but none had gone so far as to equate admission of character evidence with a federal constitutional violation. The U.S. Supreme Court has, in fact, specifically left that question open. "Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." Estelle v. McGuire, 502 U.S. 62, 75 n. 5, 112 S.Ct. 475, 484 n. 5, 116 L.Ed.2d 385 (1991). Petitioner has a novel construction of AEDPA's requirements: that if the Supreme Court expressly refused to decide an issue, it has in effect adopted established circuit law as the law of the Supreme Court. If plaintiff's novel argument were correct, the Supreme Court could never remain expressly silent on an issue because such silence would nevertheless constitute an express speaking out. Strained as the argument is strictly from a logical standpoint, it has also been expressly rejected by the courts. See Alberni v. McDaniel, 458 F. 3d 860, 864 (9th Cir. 2006) (recognizing that the Supreme Court's reservation of the issue of propensity evidence as a due process violation doomed petitioner's argument therein). Because violation of clearly established law as pronounced by the United States Supreme Court is the sine qua non for an AEDPA violation, see Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted if due process violation not clearly established by the Supreme Court), and such pronouncement is not available for the character/propensity evidence issue, petitioner is left to claiming that the interpretation of California law by California courts was wrong.

However, the record of this case discloses that the state courts did indeed interpret their law as allowing the use of the asserted character evidence of which petitioner complains. Because this court may not second guess the state courts on application of their law (except in

8

circumstances demonstrating an avoidance of a federal constitutional rule), see Estelle, supra, at 502 U.S. at 67-68, 112 S.Ct. at 480; see also Belmontes v. Woodford, 350 F.3d 861, 888 (9th Cir. 2003) (overruled on other grounds), there remains nothing for this federal court to adjudicate. That is, in the absence of a recognized federal constitutional principle at odds with the state law, this court's AEDPA analysis is over. Nor is this a situation where the state courts conceded error but found the error to be harmless.

Moreover, even if it were appropriate to make a decision on the merits of relevance, and hence, fundamental fairness, the undersigned cannot find that admission of the prior gun conviction was an error. Nor is there any indication that it was so prejudicial that it rendered the trial fundamentally unfair. The trial court twice admonished the jury concerning the evidence. When the prior felony was mentioned during petitioner's testimony the trial court stated to the jury:

> If you find that any witness or that this witness has been convicted of a felony, you may consider that fact only in evaluating the credibility of the witness' testimony. The fact of a conviction does not necessarily destroy or impair a witness' credibility. It is up to you to decide the weight of the fact and whether that fact makes a witness less believable.

Reporter's Transcript-Coleman (RT) at 731.

The trial court instructed the jury again with a similar instruction at the end of trial. RT at 1073-74.

Accordingly, the state court's decision on the admissibility of the character evidence under state law is the first and last word on this claim. This claim should be denied.

Claim 2 - Expert Testimony

Petitioner next argues that his Sixth and Fourteenth Amendment rights were violated when the court precluded petitioner's counsel from asking an expert witness if drug dealers in the circumstances of petitioner's case are commonly armed. AP at 22.

*Legal Standard*

As discussed in the prior section, a district court may not collaterally review a

state court evidentiary ruling unless it violates federal law, either by violating a specific constitutional provision or by infringing upon the due process right to a fair trial. Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quotations and citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)(plurality opinion) (holding that due process does not guarantee a defendant the right to present all relevant evidence). This latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. Holmes, 547 U.S. at 324. "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 326; see also Egelhoff, 518 U.S. at 43 (holding that the exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."). The defendant, not the state, bears the burden to demonstrate that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental." Egelhoff, 518 U.S. at 47 (internal quotations and citations omitted).

Discussion

The Court of Appeal discussed the relevant background of this claim.

The prosecution called Scott MacLafferty, a homicide detective with the City of Sacramento Police Department, as a witness. On cross-examination, counsel for [petitioner] asked, "[I]s it fair to say that when a person is dealing drugs or making a drug run and they have drugs in the car and at a nighttime location, on occasion in your experience [as a former narcotics officer for four and a half years] have you seen that [a] drug dealer would have a weapon in the car?" The prosecutor objected on the grounds of relevance.

10

The trial court sustained the objection, stating, "To draw the inference that [other drug dealers] in some cases have possessed guns that this victim did I think is just sheer speculation. So I would exclude it under relevance. In addition, under [Evidence Code section] 352 unless there is evidence, and I have not been presented any at this point, this stage of the trial, nor have I heard from counsel, if there is no evidence that the victim possessed a firearm, I think this kind of evidence would be confusing and misleading to the jury ... [¶] ... and it would confuse them into believing that there might be a self-defense issue when, at least as far as I'm aware, there is none here."

[Petitioner] contends that the trial court prejudicially erred "by excluding expert testimony that drug dealers in the circumstances of [his] case are commonly armed" in violation of his "constitutional rights to present defense evidence and to a fair trial." He asserts that an affirmative answer to the question would have supported his theory that Harvey had a gun inside his car that night, thereby bolstering his defense that he did not personally shoot the victim.

A trial court's decision to admit or exclude evidence is a matter committed to its discretion "'and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (People v. Brown (2003) 31 Cal.4th 518, 534.)

As the trial court correctly noted, [petitioner] submitted no evidence whatsoever there was a gun in Harvey's car. A search of Harvey's car after the shooting failed to yield any weapons. Because counsel's hypothetical question lacked an evidentiary foundation, "'[t]he inference which defendant sought to have drawn from the [proffered evidence] is clearly speculative, and evidence which produces only speculative inferences is irrelevant evidence.'" (People v. Babbitt (1988) 45 Cal.3d 660, 682.)

Assuming arguendo the trial court erred in excluding the evidence, the error could not have been prejudicial under the standard set forth in People v. Watson (1956) 46 Cal.2d 818, 836. (People v. Whitson (1998) 17 Cal.4th 229, 251.)[3]

Even if Detective MacLafferty gave an affirmative answer to defense counsel's compound and confusing hypothetical, the evidentiary value of this testimony would have been inconsequential. No witness saw Allen reach for or pick up a second gun after shooting Harvey. On the contrary, Allen testified that [petitioner] had a gun when he approached Harvey, and another witness stated that the man who robbed Harvey after the shooting (which [petitioner] admitted to)

---

[3] [from Court of Appeal opinion] [Petitioner] is incorrect that the error is one of constitutional dimension and that Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] applies. Generally, the erroneous exclusion of some defense evidence as to an element of an offense is evaluated by the traditional standard of review set forth in Watson, not the more stringent "harmless beyond a reasonable doubt" standard for federal constitutional error set forth in Chapman. The application of the ordinary rules of evidence does not infringe on a defendant's due process rights (People v. Boyette (2002) 29 Cal.4th 381, 427-428; People v. Cunningham (2001) 25 Cal.4th 926, 999), and therefore the Watson test applies (People v. Fudge (1994) 7 Cal.4th 1075, 1102-1103).

11

> was armed with a gun. Given the total dearth of evidence that Harvey was armed, the jury was unlikely to change its verdict based on the unsurprising truism that drug dealers often carry guns with them when consummating nighttime drug deals. Any error was certainly harmless.

People v. Coleman, 2008 WL 2842541 *3-4.

Petitioner theorizes that allowing this evidence could have supported a scenario where co-defendant Allen, who already had one gun, went to the victims's car window, grabbed a gun that the victim (a drug dealer) had, and then shot the victim with both guns. AP at 22. Petitioner testified that Allen was partially inside the car window when the first shots were fired at the victim. RT at 680.

However, as the trial court noted, petitioner presented no other evidence to support this theory and there was no evidence that the victim possessed a gun. The trial court made a decision that allowing this line of questioning could confuse the jury. Petitioner has failed to demonstrate that Court of Appeal's decision upholding the trial court's decision was contrary or involved an unreasonable application of Supreme Court authority. As this was sheer speculation, the trial court was well within its discretion to prevent the line of questioning.[4]

Applying the five factor test pertinent to exclusion of evidence set forth in Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004), petitioner cannot prevail. The evidence lacked probative value. Both defendants testified that the other defendant was the one who fired the shots, and each defendant disclaimed even being in immediate proximity to the victim's car. Therefore, evidence that a shooter, whoever it was or whoever they were, took a gun from the victim and used that gun as well as his own, could apply to either defendant (according to the testimony of each). This testimony would not have exonerated petitioner at the expense of his

---

[4] The Ninth Circuit may interpret the ability of defendants to submit inadmissible evidence more loosely than does the Supreme Court, see e.g., Lunberry v. Hornbeak, 605 F.3d 754 (9th Cir. 2010) (focusing entirely on use that defendant may have put the evidence without any focus on whether the evidence rules were applied "mechanistically," i.e., for no valid purpose or disproportionally.) However, even under this more liberal interpretation, petitioner could not prevail for the reasons set forth herein.

co-defendant. While the detective's opinion that drug dealers often carry weapons would have been reliable in the abstract, it did not tend to prove or disprove petitioner's involvement, i.e., it would have been completely speculative as to its application in this case. Similarly, because of the speculation entailed with the use of an opinion that drug dealers carry guns to the facts of this case, the trier of fact could not have properly evaluated it. The proffered opinion that drug dealers carry guns was not the sole evidence on the subject, because defendants were involved in the drug trade and they carried weapons according to the evidence. Finally, the attempted use of the opinion was so stretched in light of the other facts, that the undersigned cannot ascribe a "case breaking" significance to the evidence.

Despite the restrictions that may preclude the introduction of certain defense evidence, petitioner was given the opportunity to present evidence that the victim possessed a gun. The trial court stated that petitioner could revisit the issue of the expert testimony if later testimony was provided that changed the evidentiary picture. RT at 162. Petitioner had the opportunity but did not present any evidence, which supports the trial court's initial reaction that petitioner's question involved sheer speculation and refutes petitioner's argument that he was prevented from mounting a defense. For all these reasons, this claim should be denied.[5]

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court assign a District Judge to this case.

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied. If petitioner files objections, he shall also address if a certificate of appealability should issue and, if so, as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate of appealability must "indicate

---

[5] The undersigned does not understand respondent's quasi-procedural bar, quasi-exhaustion argument. No state court applied procedural bar, so there is nothing to review on that score. To the extent any exhaustion issue applies, the undersigned need not reach that issue as the claim has been denied on its merits. 28 U.S.C. §2254(b)(2).

1  which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

2  These findings and recommendations are submitted to the United States District
3  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-
4  one days after being served with these findings and recommendations, any party may file written
5  objections with the court and serve a copy on all parties.  Such a document should be captioned
6  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
7  shall be served and filed within fourteen days after service of the objections.  The parties are
8  advised that failure to file objections within the specified time may waive the right to appeal the
9  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: 08/16/2010

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

ggh:ab
cole0638.hc